IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| RALLS CORPORATION,<br>318 Cooper Circle<br>Peachtree City, GA 30269<br><br>*Plaintiff*,<br>v.<br><br>COMMITTEE ON FOREIGN<br>INVESTMENT IN THE UNITED STATES,<br>1500 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20220<br><br>and<br><br>TIMOTHY F. GEITHNER,<br>in his official capacity as<br>Secretary of the Treasury and<br>Chairperson of the Committee on<br>Foreign Investment in the United States,<br>1500 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20220<br><br>*Defendants*. | Case No. _____ |

## DECLARATION OF JIALIANG WU

I, Jialiang Wu, declare under penalty of perjury that the following is true and accurate to the best of my knowledge, information, and belief:

1. I am over 18 years of age, am competent to testify about the matters set forth herein, and submit the testimony below based upon personal knowledge and information.

2. I am an owner of Ralls Corporation ("Ralls"), Vice President of Sany Group and General Manager of Sany Electric Company, a wholly-owned subsidiary of Sany Group.

3. Ralls acquired the Butter Creek projects from Terna Energy USA Holding Corporation ("Terna") in March 2012 to provide a United States market opportunity for Sany Electric wind turbines. Ralls and Sany are affiliated entities, wherein Ralls is the development arm of Sany wind turbines in the United States.

4.      The Butter Creek projects involve developing four separate 10 megawatt ("MW") windfarms in north central Oregon consisting of twenty 2.0 MW wind turbine generators, five turbines per windfarm.

5.      The assets that Ralls acquired in the March 2012 transaction included land rights to construct windfarms, power purchase agreements, transmission interconnection agreements and ancillary agreements with other companies, agreements for the management and use of shared interconnection facilities with the owners of nearby windfarms, and the government permits necessary to construct a commercial windfarm.

6.      Once completed, these windfarms would be tied into the PacifiCorp transmission grid in the western United States, though neither Ralls nor any Ralls subsidiary will control or have access to the grid. PacifiCorp itself owns thousands of MWs of wind energy generating facilities, and nearly 10,600 MW of total generating assets. Once constructed, Ralls's 40 MW of wind-generated power will comprise approximately 0.37% of PacifiCorp's total generating capacity, and approximately 2.3% of its wind energy generating capacity.

7.      The Butter Creek projects present Ralls and Sany with an opportunity for significant commercial investment. First, the projects would provide an opportunity for Sany to demonstrate the reliability of its wind turbines and to bolster their ability to compete in the United States wind market. Second, the Butter Creek projects would allow Sany and Ralls to pursue the competitive rate structure reflected in the power purchase agreements with the local utility, PacifiCorp. These rates would provide an opportunity for a profit from the Butter Creek projects (provided operating expenses are kept in check and within prudent industry practice).

8.      A large part of the value of the Butter Creek projects to Ralls is the receipt of the federal investment tax credit. This program would have allowed the project entities the opportunity to receive a cash payment equal to 30% of qualified expenditures on the windfarms, so long as the project is placed in service by December 31, 2012. The cash grant program, as well as the federal production tax credit—the other federal wind energy incentive that could be taken in lieu of the cash grant—expire at the end of 2012.

9.      Ralls estimates the value of this incentive to be $25 million.

10.     Ralls based its decision to acquire and develop the Butter Creek projects, as well as the specific purchase price, in part on its expectation that it would receive this federal incentive. The commercial viability of the Butter Creek projects depends largely on receipt of this incentive. Without the ability to receive the federal cash grant, not only is the value of the Butter Creek projects significantly reduced, but also its profitability.

11.     Ralls is in the business of identifying and developing windfarm project opportunities, and does not intend to be the long-term owner of the Butter Creek projects. In acquiring the Butter Creek projects, Ralls's main purpose was to ensure utilization of Sany Electric wind turbines at the Butter Creek sites, advancing Sany Electric's United States market presence. Since Ralls intends to sell the Butter Creek projects, it will be able to receive a commercially acceptable price only if the projects could be placed in service by December 31, 2012, thereby qualifying for the federal energy incentive. Ralls intends to continue identifying

and developing windfarm projects in the United States for utilization of Sany turbines.

12. Ralls's general contractor for the Butter Creek projects, Aubrey Silvey, began construction on the projects on April 23, 2012. Under the direction of its General Manger, Gene Anderson, Silvey created an aggressive construction schedule, with a target date for commercial operation of the turbines by December 31, 2012, the date by which the project would need to be placed in service so as to be in a position to qualify for certain federal renewal energy incentives.

13. The "placed in service" standard requires that the projects are entirely constructed and connected to the electric grid.

14. Shortly after Ralls acquired the Butter Creek projects, the United States Navy expressed concerns that the wind turbines at the Lower Ridge Windfarm might result in "airspace conflicts." The Navy requested that Ralls move the planned locations for turbines at the Lower Ridge Windfarm. Ralls agreed to comply with this request, at significant expense, notwithstanding the Navy's lack of authority to mandate the move.

15. In order to move the turbine locations at the Lower Ridge Windfarm, Ralls needed to obtain approvals from the Oregon Public Utility Commission. The United States Navy wrote to the Oregon Public Utility Commission on Ralls's behalf, emphasizing its concern that the placement of the wind turbines at this location "may have negative security implications" for the surrounding airspace, but recommended that the requested approvals be issued. The Navy also stated that it "appreciate[ed]" Ralls's "cooperation and consideration" in moving the Lower Ridge Windfarm, particularly given the time constraints.

16. Ralls believed that Navy's assent indicated that the United States Government was unlikely to raise national security concerns about the Butter Creek projects.

17. On June 28, 2012, Ralls and Terna submitted a voluntary notice to the Committee on Foreign Investment in the United States ("CFIUS") informing CFIUS of Ralls's recent acquisition of the Project Companies from Terna. Ralls included all of the information required of it. In the weeks following this notice, CFIUS asked Ralls and Terna several follow-up questions, as to all of which Ralls and Terna timely provided responses.

18. On July 25, 2012, Ralls received an Interim Order from CFIUS that prohibited continued construction on the Butter Creek sites as of July 25, 2012, required the removal of all items stored or stockpiled on these sites by July 30, 2012, and barred access to the Butter Creek sites except to remove items.

19. On July 26, 2012, Ralls notified CFIUS that it was considering selling the Butter Creek projects to a U.S. buyer.

20. On August 2, 2012, CFIUS issued an Amended Interim Order that included all portions of the July 25, 2012 Interim Order, and also purporting to prohibit Ralls from selling or offering for sale any Sany equipment for use or installation on the Butter Creek sites, even if the project were to be owned by U.S. persons. Further, the August 2, 2012 Amended Interim Order purported to prohibit Sany Electric from selling the Butter Creek projects without first removing the cement foundations already installed on the sites, notifying CFIUS of an intended buyer, and

delaying any sale for 10 days in order for CFIUS to object to the sale.

21. Since receipt of the July 25, 2012 Interim Order, all construction activity at the Butter Creek sites has remained entirely suspended and Ralls, as well as its employees, contractors, and agents, have remained in total compliance with CFIUS's Interim Order and Amended Interim Order. Likewise, Silvey has expressed concern about proceeding with construction while the Interim Order and Amended Interim Order remain in place. This delay has seriously threatened the commercial viability of the Butter Creek projects.

22. Aubrey Silvey has informed Ralls that the latest date on which construction can resume in order for the projects to be completed by December 31, 2012 is September 20, 2012.

23. Aubrey Silvey's timeline assumes the use of previously-acquired Sany wind turbines on these projects. If Ralls or a U.S. buyer is prohibited from using these turbines, it will be more difficult (if not practically impossible) and significantly more expensive to place the projects in service by December 31, 2012.

24. Further, prohibiting the use of Sany wind turbines will frustrate one of the primary purposes of Ralls's acquisition and development of the Butter Creek projects: the demonstration of the reliability of Sany wind turbines in the U.S. wind industry, particularly its superior run time compared to competitor products, which are used on other nearby windfarms. The Amended Interim Order eviscerates that purpose and voids the overriding benefit of the projects to Sany and Ralls.

25. The continued existence of the Interim Order and the Amended Interim Order also impugns the quality of the products and the integrity of Ralls and Sany, causing them continued harm in the U.S. market and making it difficult to find a buyer for the Butter Creek projects.

26. The continued prohibition of construction on the Butter Creek projects will necessarily prevent Ralls from placing the projects in service by December 31, 2012, and from receiving the critical federal incentive, a result that would significantly reduce the commercial viability of the projects and reduce Ralls's Butter Creek assets to *de minimis* salvage value. This result would be entirely attributable to the Interim Order and the Amended Interim Order.

27. These Orders have prevented Ralls from selling the Butter Creek sites as a going concern, as was always Ralls's intention. In order to achieve a sale of these sites, construction must resume immediately in order for the projects to be placed in service by December 31, 2012 and qualify for the federal energy incentive to which it is otherwise legally entitled. Without this incentive, the projects will have far less commercial value and divestment will be difficult. This result would be entirely attributable to the Interim Order and the Amended Interim Order.

28. Of additional value to the Butter Creek projects was their prior receipt of Federal Aviation Administration "Determinations of No Hazard," which demonstrated an absence of federal governmental concerns regarding the placement of the wind turbines, including the absence of national security concerns. In deciding to purchase the Butter Creek projects, Ralls relied in large part on these determinations.

29. Had these Orders not been issued, construction would have proceeded in

accordance with the original schedule. I have every reasonable expectation that this schedule would have ensured that the Butter Creek projects would have been placed in service by December 31, 2012.

30.  Ralls and Sany have been cooperating with CFIUS to explore alternatives to mitigate CFIUS's concerns, but those good-faith efforts have been rejected.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 12 day of September 2012.

_____
Jialiang Wu