IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RALLS CORPORATION,<br>318 Cooper Circle<br>Peachtree City, GA 30269<br><br>      *Plaintiff*,<br>v.<br><br>COMMITTEE ON FOREIGN<br>INVESTMENT IN THE UNITED STATES,<br>1500 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20220<br><br>      and<br><br>TIMOTHY F. GEITHNER,<br>in his official capacity as<br>Secretary of the Treasury and<br>Chairperson of the Committee on<br>Foreign Investment in the United States,<br>1500 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20220<br><br>      *Defendants*. | Case No. _____ |

## DECLARATION OF GENE ANDERSON

I, Gene Anderson, declare under penalty of perjury that the following is true and accurate to the best of my knowledge, information, and belief:

1. I am over 18 years of age, am competent to testify about the matters set forth herein, and submit the testimony below based upon personal knowledge and information.

2. I am the General Manager of Aubrey Silvey Enterprises, Inc. (SILVEY), Renewable Energy Division. SILVEY is the general contractor for the Butter Creek projects. Intelligent Wind Energy, LLC ("IWE"), a subsidiary of Ralls Corporation ("Ralls"), hired SILVEY to be the general contractor for the Butter Creek projects.

3. The Butter Creek projects involve developing four separate 10 megawatt ("MW") windfarms in north central Oregon consisting of twenty 2.0 MW wind turbine generators, five turbines per windfarm. The windfarms would be tied into the PacifiCorp transmission grid in the

western United States, though neither Ralls nor any Ralls subsidiary will control or have access to the grid.

4.     Construction began on the Butter Creek projects on April 23, 2012. At that time, I composed a construction schedule designed to end with the commercial operation of the turbines on December 21, 2012. Under this schedule, the projects would have been placed in service before December 31, 2012, the date by which the project would need to be placed in service so as to be in a position to qualify for certain federal renewal energy incentives.

5.     In order to meet the December 31, 2012 deadline to be placed in service, the Butter Creek projects construction plan included an aggressive timeline, requiring nearly continuous construction activity between April 23, 2012 and December 21, 2012. This construction schedule could absorb only a small delay.

6.     On July 25, 2012, IWE notified me that they were notified that the Committee on Foreign Investment in the United States ("CFIUS") issued an Interim Order that day prohibiting any further construction on the Butter Creek site as of July 25, 2012. The CFIUS order also required the removal of all items stored or stockpiled on the sites by July 30, 2012.

7.     Upon receipt of notice from IWE of this Interim Order, and upon request from IWE, SILVEY suspended all construction activity and otherwise complied with the Interim Order.

8.     On August 2, 2012, I was notified that CFIUS had issued an Amended Interim Order that day, purporting to prohibit Ralls from selling any equipment produced by the Sany Group for use or installation on the Butter Creek sites. I understood this Amended Interim Order to prevent the use of any Sany Electric wind turbines in the Butter Creek project.

9.     Since I was notified of the July 25, 2012 Interim Order and the August 2, 2012 Amended Interim Order, I have endeavored in my capacity with SILVEY to comply fully with both orders. To wit, all construction activity at the Butter Creek sites has been entirely suspended since July 25, 2012, and SILVEY has remained in total compliance with the terms of both orders at all times. Further, SILVEY will not resume construction while either the Interim Order or the Amended Interim Order remains in place.

10.    I have revised the construction schedule several times during this period of suspension in an effort to determine whether, if construction were resumed, the project could still be concluded by December 31, 2012.

11.    I have determined that the latest date on which construction can resume in order for the projects to be completed by December 31, 2012 is September 20, 2012. If construction begins any time after September 20, 2012, it will be a practical impossibility for the projects to be placed in service by December 31, 2012.

12.    The use of Sany wind turbines is advantageous to completing the projects by December 31, 2012. If we are unable to use Sany wind turbines, it will be more difficult or more expensive to place the projects in service by December 31, 2012.

13.     Had CFIUS not issued its July 25, 2012 Interim Order and its August 2, 2012 Amended Interim Order, I would have proceeded with the construction project in accordance with the original schedule, using Sany wind turbines.

14.     I have overseen construction schedules in several similar projects. Based upon my experience in those projects, I have every reasonable expectation that the original construction schedule would have provided for the Butter Creek projects to be placed in service by December 31, 2012.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 12th day of September 2012.

_____
Gene Anderson