**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **RALLS CORPORATION**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:12-cv-01513-ABJ |
| | ) | |
| **BARACK H. OBAMA,** in his official capacity as | ) | |
| President of the United States, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| ———————————————————— | ) | |

**DEFENDANTS' REPLY MEMORANDUM
<u>IN SUPPORT OF THEIR MOTION TO DISMISS</u>**

# TABLE OF CONTENTS

Introduction..........................................................................................................................1

Discussion............................................................................................................................3

    I.   This Court Lacks Jurisdiction Over Ralls's Challenge to the
Presidential Order ..............................................................................................3

        A.  The Defense Production Act Explicitly Prohibits Judicial
Review of Presidential Orders ............................................................3

        B.  The Structure of the Defense Production Act Demonstrates
that Congress Had Good Reason to Preclude Review of
Presidential Orders.............................................................................6

            1.  Congress's Decision to Preclude Judicial Review of
a Presidential Action to Address a Foreign Transaction
that Raises a Threat to National Security Is Consistent
with the Scope of Presidential Authority in this Area .................6

            2.  The Structure of the Act Confirms that Congress Intended
to Preclude Judicial Review of Presidential Actions
under the Act.................................................................................9

        C.  The Preclusion of Judicial Review Applies with Particular
Force to Ralls's Insubstantial, As-Applied Challenges to the
Presidential Order ............................................................................11

            1.  Ralls Raises No Challenge to the President's Interpretation
of His Authority under the Defense Production Act that
Allows It to Circumvent the Jurisdictional Bar .......................11

            2.  Ralls Raises No Substantial Constitutional Challenge to the
President's Exercise of His Discretion under the Defense
Production Act ...........................................................................15

    II.  Ralls's Challenge to the Amended Interim Order Is Moot.........................20

Conclusion .......................................................................................................................23

# TABLE OF AUTHORITIES

## CASES

*Armstrong v. Bush*,
924 F.2d 282 (D.C. Cir. 1991) ......................................................................................6

*Bd. of Regents of State Colleges v. Roth*,
408 U.S. 564 (1972) .......................................................................................................18

*Beethoven.com, LLC v. Librarian of Congress*,
394 F.3d 939 (D.C. Cir. 2005) ....................................................................................22

*Chamber of Commerce v. Reich*,
74 F.3d 1322 (D.C. Cir. 1996) .....................................................................................14

*Chicago & Southern Airlines, Inc. v. Waterman S.S. Corp.*,
333 U.S. 103 (1948) .........................................................................................................7

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983) ...........................................................................................................21

*Clark v. Martinez*,
543 U.S. 371 (2005) .........................................................................................................16

*Corley v. United States*,
556 U.S. 303 (2009) .........................................................................................................16

*Dakota Cent. Tel. Co. v. South Dakota ex rel. Payne*,
250 U.S. 163 (1919) ...........................................................................................................7

*Dalton v. Specter*,
511 U.S. 464 (1994) .........................................................................................11, 12, 13, 16

*Dames & Moore v. Regan*,
453 U.S. 654 (1981) .........................................................................................5, 15, 18, 19

*Dart v. United States*,
848 F.2d 217 (D.C. Cir. 1988) .....................................................................................13

*Del Monte Fresh Produce Co. v. United States*,
570 F.3d 316 (D.C. Cir. 2009) .....................................................................................21

*El-Shifa Pharm. Indus. v. United States*,
607 F.3d 836 (D.C. Cir. 2010) .......................................................................................8

*Empresa Cubana Exportadora de Alimentos y Productos Varios v. Dep't of Treasury*,
    638 F.3d 794 (D.C. Cir. 2011), *cert. denied*, 132 S. Ct. 2377 (2012) ..............................17

*FEC v. Wis. Right to Life, Inc.*,
    551 U.S. 449 (2007)......................................................................................................20

*Franklin v. Massachusetts*,
    505 U.S. 788 (1992)......................................................................................................12

*Fund for Animals, Inc. v. U.S. Bureau of Land Mgt.*,
    460 F.3d 13 (D.C. Cir. 2006).........................................................................................21

*General Elec. Co. v. EPA*,
    360 F.3d 188 (D.C. Cir. 2004).......................................................................................17

*Gutierrez de Martinez v. Lamagno*,
    515 U.S. 417 (1995)........................................................................................................4

*Haig v. Agee*,
    453 U.S. 280 (1981)......................................................................................................15

*Holy Land Found. for Relief & Dev. v. Ashcroft*,
    333 F.3d 156 (D.C. Cir. 2003).......................................................................................19

*Honig v. Doe*,
    484 U.S. 305 (1988)......................................................................................................20

*Johnson v. Robison*,
    415 U.S. 361 (1974)......................................................................................................15

*Leedom v. Kyne*,
    358 U.S. 184 (1958)......................................................................................................13

*Manani v. Filip*,
    552 F.3d 894 (8th Cir. 2009) ........................................................................................19

*McBryde v. Comm. to Review Circuit Council Conduct & Disability Orders*
    *of Judicial Conf. of United States*,
    264 F.3d 52 (D.C. Cir. 2001).........................................................................................14

*Medellin v. Texas*,
    552 U.S. 491 (2008)........................................................................................................5

*Milner v. Dep't of Navy*,
    131 S. Ct. 1259 (2011)....................................................................................................4

iii

*Mississippi v. Johnson,*
    71 U.S. (4 Wall.) 475 (1867) .................................................................................8, 16

*Newdow v. Roberts,*
    603 F.3d 1002 (D.C. Cir. 2010) ....................................................................................8

*People for the Ethical Treatment of Animals, Inc. v. Gittens,*
    396 F.3d 416 (D.C. Cir. 2005) ...............................................................................21, 22

*Ralpho v. Bell,*
    569 F.2d 607 (D.C. Cir. 1977) ....................................................................................11

*Reno v. American-Arab Anti-Discrimination Committee,*
    525 U.S. 471 (1999).....................................................................................................17

*Tate v. District of Columbia,*
    627 F.3d 904 (D.C. Cir. 2010) ....................................................................................20

*Theodore Roosevelt Conservation P'ship v. Salazar,*
    661 F.3d 66 (D.C. Cir. 2011) ......................................................................................20

*Youngstown Sheet & Tube Co. v. Sawyer,*
    343 U.S. 579 (1952).......................................................................................................5

## STATUTES

5 U.S.C. § 701(a)(1)............................................................................................................13

50 U.S.C. App. § 2170....................................................................................................1, 6

50 U.S.C. App. § 2170(b)(1)(D).......................................................................................18

50 U.S.C. App. § 2170(b)(1)(E).......................................................................................10

50 U.S.C. App. § 2170(b)(2)(C).......................................................................................10

50 U.S.C. App. § 2170(b)(3).............................................................................................10

50 U.S.C. App. § 2170(b)(6)...............................................................................................9

50 U.S.C. App. § 2170(d) ......................................................................................2, 5, 12

50 U.S.C. App. § 2170(d)(1).........................................................................3, 4, 7, 11, 12, 14

50 U.S.C. App. § 2170(d)(2)........................................................................................9, 10

50 U.S.C. App. § 2170(d)(3) ........................................................................................15

50 U.S.C. App. § 2170(d)(4) ..........................................................................................4

50 U.S.C. App. § 2170(e) ........................................................................2, 3, 4, 5, 12, 13, 15

Pub. L. No. 110-49, § 6, 121 Stat. 246, 259 (2007) ......................................................10

## MISCELLANEOUS

*A Review of the CFIUS Process of Implementing the Exon-Florio Amendment: Hrgs.
Before the S. Comm. on Banking, Housing, and Urban Affairs*, 109th Cong.
(2005) ..........................................................................................................................18

31 C.F.R. § 800.401(c) ....................................................................................................18

Order of September 28, 2012 Regarding the Acquisition of Four U.S. Wind Farm
Project Companies by Ralls Corporation, 77 Fed. Reg. 60,281 (Oct. 3, 2012) .......2, 12, 20

H.R. Rep. No. 110-24 (2007) ......................................................................................8, 10

S. Rep. No. 110-80 (2007) ..............................................................................................10

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **RALLS CORPORATION**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:12-cv-01513-ABJ |
| | ) | |
| **BARACK H. OBAMA,** in his official capacity as | ) | |
| President of the United States, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**DEFENDANTS' REPLY MEMORANDUM**
**IN SUPPORT OF THEIR MOTION TO DISMISS**

Under the Defense Production Act, 50 U.S.C. App. § 2170 ("the Act"), the President has the power to review the acquisition of a United States business by a foreign person, and to prohibit any transaction – even a completed transaction – where he finds that the transaction poses a threat to the national security.   Ralls Corporation, an entity wholly owned by two Chinese citizens, entered into a transaction acquiring four Oregon companies organized to develop windfarms on property in the vicinity of a military installation.   Despite the obvious potential that this transaction could present a national security concern, Ralls did not seek review by the Committee on Foreign Investment in the United States ("CFIUS") before proceeding with its transaction.   It therefore subjected itself to the possibility that (despite its lack of notice to the Committee) CFIUS would learn of the transaction, that CFIUS's review would lead to a recommendation to the President, and that the President would find that the transaction posed a threat to national security that required him to take action to prohibit the transaction.

The President did so here.   He found credible evidence that led him to believe that Ralls Corporation would exercise control over the Oregon companies in a way that threatens to impair

the national security.   He accordingly exercised his authority under 50 U.S.C. App. § 2170(d) to

prohibit the transaction.   Order of September 28, 2012 Regarding the Acquisition of Four U.S.

Wind Farm Project Companies by Ralls Corporation ("Presidential Order"), 77 Fed. Reg. 60,281

(Oct. 3, 2012).   Under the express terms of the Defense Production Act, his findings and actions

on this score are not subject to judicial review.   50 U.S.C. App. § 2170(e) ("The actions of the

President under paragraph (1) of subsection (d) of this section and the findings of the President

under paragraph (4) of subsection (d) of this section shall not be subject to judicial review.").

Ralls nonetheless challenges the Presidential Order prohibiting the transaction.   It

cannot overcome the express preclusion of review in Section 2170(e), for its claims are direct

challenges to the President's findings and actions in issuing his Order.   Indeed, Ralls's claims

present the very concerns that motivated Congress to enact the statutory preclusion of review.

Ralls asks the Court to review the President's exercise of discretion that Congress has afforded to

him in the field of national security.   In enacting Section 2170(e), Congress recognized that

such a review would not be within the competence of the judiciary.

Ralls seeks to avoid the bar on judicial review by asserting that the President exceeded

his statutory authority under the Act.   Under settled law, the President is not subject to a suit

raising such a theory.   Ralls also seeks to overcome Section 2170(e) by raising due process and

equal protection claims.   Neither claim, however, presents the sort of substantial constitutional

question that might prompt the Court to search for a limiting construction of Section 2170(e) that

would permit review of those claims.   In any event, no such construction is available, as each of

Ralls's claims is a challenge to the President's findings and actions under the Act, and so the

claims fall squarely within the statutory preclusion of review.   Ralls fares no better in its

challenge to CFIUS's expired interim order; that challenge is now moot.   The complaint thus should be dismissed for lack of jurisdiction.

**Discussion**

**I.      This Court Lacks Jurisdiction Over Ralls's Challenge to the Presidential Order**

    **A.      The Defense Production Act Explicitly Prohibits Judicial Review of Presidential Orders**

The plain language of the Defense Production Act affords the President broad power to protect the national security by prohibiting the acquisition by a foreign person of a United States business, and protects his exercise of this power from judicial review.   "[T]he President may take such action for such time as the President considers appropriate to suspend or prohibit any covered transaction that threatens to impair the national security of the United States."   50 U.S.C. App. § 2170(d)(1).   If the President finds that it is appropriate to take action under the Act, "[t]he actions of the President under [paragraph (d)(1)] and the findings of the President under [paragraph (d)(4)] shall not be subject to judicial review."   50 U.S.C. App. § 2170(e). The Act thus explicitly, and unmistakably, precludes a plaintiff from challenging the President's "findings" that action is warranted under the Act, or the "actions" that he "considers appropriate" in ordering the suspension or prohibition of a transaction.

Ralls's claims fall squarely within the terms of this statutory preclusion of review. Ralls's complaint alleges that the President exceeded his authority under the Act by issuing a Presidential Order that not only prohibited Ralls's acquisition of the Project Companies, but also restricted Ralls's access to the Project Companies during the unwinding process.   (Am. Compl., ¶¶ 132-143, ECF No. 20.)   Ralls also contends that the Presidential Order should be reversed because the President allegedly violated principles of due process or equal protection when he

3

issued his order against Ralls.  (*Id.*, ¶¶ 144-167.)   These as-applied claims challenging the exercise of the President's discretion under the Act are necessarily challenges to the President's "findings" that national security required the prohibition of the transaction, 50 U.S.C. App. § 2170(d)(4), and to the "actions" that the President "consider[ed] appropriate" to fulfill the "prohibit[ion]" of Ralls's acquisition of the Project Companies, 50 U.S.C. App. § 2170(d)(1). Ralls's claims are therefore barred under the plain language of 50 U.S.C. App. § 2170(e).

Ralls seeks to avoid this result through a disquisition on the principle of constitutional avoidance, which it contends requires the Court to interpret Section 2170(e) so as to permit review of its claims.   (Pl.'s Mem in Opp'n to Mot. to Dismiss ("Opp'n") 14-19, ECF No. 35.) This discussion is beside the point; as will be discussed below, this case does not present any serious constitutional question that could prompt the Court to seek a limiting construction of Section 2170(e).   But more to the point, this interpretive principle could apply only where a statute is "reasonably susceptible to divergent interpretation." *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 434 (1995).   Ralls nowhere in its brief offers any alternative interpretation of Section 2170(e) that could save its constitutional claims, and no such interpretation is available.   The plain language of the statute instead explicitly prohibits review of the President's "findings" and "actions," which are precisely what Ralls asks the Court to review here.   Ralls's constitutional claims could only be squared with the text of Section 2170(e) if the statute were rewritten to permit, rather than to exclude, review of the President's findings and actions.   The statutory text, however, cannot be judicially edited in this manner. *See Milner v. Dep't of Navy*, 131 S. Ct. 1259, 1267 (2011) (court is not free to rewrite a statute "by taking a red pen to the statute – cutting out some words and pasting in others until little of

4

the actual provision remains") (internal quotation marks omitted).

And even if Ralls had attempted to offer any limiting construction of Section 2170(e), that attempt would have run against "'the strongest of presumptions and the widest latitude of judicial interpretation'" supporting Presidential power in a field where Congress has independently ratified his power and has insulated that power from judicial review. *Dames & Moore v. Regan*, 453 U.S. 654, 668 (1981) (quoting *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 637 (1952) (Jackson, J., concurring)).   Because Congress and the President stand in agreement that his broad national security power under the Defense Production Act will not be subject to judicial second-guessing, "'the burden of persuasion [rests] heavily'" on Ralls in its attempt to attack the statutory scheme.   *Id.*   In response, Ralls argues, oddly, that this case is not a "category one" case under Justice Jackson's conception of Presidential powers, but instead a "category three" case in which the President's power would be at its "'lowest ebb'" because he stands in opposition to Congress.   (Opp'n 35, quoting *Medellin v. Texas*, 552 U.S. 491, 525 (2008), in turn quoting *Youngstown Sheet & Tube Co.*, 343 U.S. at 637-38 (Jackson, J., concurring).)   The statute itself answers this unconvincing argument.   Congress did not withdraw power from the President, and it did not create judicial review over the President's findings or actions.   Instead, in 50 U.S.C. App. § 2170(d), Congress described the President's powers to protect the national security quite expansively, and in 50 U.S.C. App. § 2170(e), Congress explicitly protected his exercise of those powers from judicial review.   This is squarely a *Youngstown* "category one" case, and the President is entitled to "the widest latitude of judicial interpretation" supporting those powers.   Ralls thus provides no reason for the Court to invent a grant of jurisdiction for which Congress did not provide.

5

**B.    The Structure of the Defense Production Act Demonstrates that Congress Had Good Reason to Preclude Review of Presidential Orders**

Congress did not preclude review of the President's orders under the Defense Production Act by accident.    To the contrary, Congress recognized that the Act involves a field in which judicial review would be singularly inappropriate.    The Act invests the President himself with the authority to take action with respect to foreign acquisitions of United States businesses that he finds raise threats to national security.    Congress recognized that the President's personal exercise of his discretion under the Act would involve the resolution of questions that are not ordinarily subject to judicial review.    Moreover, Congress understood that strict deadlines under the Act were necessary to ensure that the Executive would retain the authority to protect the national security in a timely and effective manner, without affecting the successful completion of transactions that do not pose national security threats.    For these reasons, Congress understood that its own review, and not that of the judiciary, would serve as the check on the President's action under the statute.    Because judicial review "would upset the intricate statutory scheme Congress carefully drafted to keep in equipoise important competing political and constitutional concerns," *Armstrong v. Bush*, 924 F.2d 282, 290 (D.C. Cir. 1991), the structure and history of the Defense Production Act confirms what is already apparent from the statutory text itself; this Court lacks jurisdiction over Ralls's claims.

**1.    Congress's Decision to Preclude Judicial Review of a Presidential Action to Address a Foreign Transaction that Raises a Threat to National Security Is Consistent with the Scope of Presidential Authority in this Area**

In enacting 50 U.S.C. App. § 2170, Congress afforded the President a broadly defined authority to take action with respect to foreign acquisitions that he finds raise threats to "national

security," and it made the deliberate decision to place that authority in the hands of the President. The President's exercise of that authority necessarily involves his exercise of discretion in matters that "are delicate, complex, and involve large elements of prophecy," which are subjects that have long been understood to be outside the scope of judicial review.   *Chicago & Southern Airlines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103, 111-12 (1948).   *See also Dakota Cent. Tel. Co. v. South Dakota ex rel. Payne*, 250 U.S. 163, 184 (1919) (President's exercise of discretion under statute granting him authority to take action "whenever he shall deem it necessary for the national security or defense" was "beyond the reach of judicial power").   In enacting Section 2170(e), Congress emphatically affirmed that the President's exercise of discretionary national security power in this area would not be reviewable.

Ralls objects that it only seeks review of legal questions, and not of the President's exercise of his discretion.   (Opp'n 38-39.)   But its claims cannot be cabined in this manner. Ralls argues, first, that the President exceeded his statutory power in imposing restrictions on its use of the Project Companies' assets during the process of unwinding its acquisition of those companies.   But 50 U.S.C. App. § 2170(d)(1) gives the President the authority to take such action as he "considers appropriate" to suspend or prohibit that transaction.   Ralls's statutory claim thus would require the Court to review why, in the exercise of his discretion under the Act, the President found it appropriate, for example, to impose conditions on Ralls's use of the Project Companies' assets.   Similarly, Ralls's due process and equal protection claims ask the Court to review the President's finding that the transaction poses a threat to national security and his exercise of discretion in determining whether to take action under the Act against other foreign-owned companies.   These are precisely the sort of claims that "regardless of how they

are styled, call into question the prudence of the political branches in matters of foreign policy or national security constitutionally committed to their discretion," *El-Shifa Pharm. Indus. v. United States*, 607 F.3d 836, 842 (D.C. Cir. 2010), for which judicial review is not available. The need for judicial forbearance here is even more evident, because Congress has specified in Section 2170(e) that the foreign policy and national security decisions at issue here are to be left to the President's discretion.

Further, Ralls ignores the fact that this case involves not only a national security matter entrusted to the Executive Branch, but the President's personal exercise of discretion in an area where Congress has directly ratified his inherent authority to take action.   Congress made the deliberate decision to place the power to prohibit a foreign acquisition directly in the hands of the President, because it recognized that he already held, under the International Emergency Economic Powers Act (IEEPA) and his inherent foreign affairs authority, the power to "reverse a transaction for national security purposes."   H.R. Rep. No. 110-24, pt. 1, at 12 (2007).

Because the Act contemplates that the President will personally take action to prohibit such acquisitions, Congress recognized that judicial review of these actions would necessarily cause a court to entangle itself in the President's decision-making, in violation of the principle that "[a] court – whether via injunctive or declaratory relief – does not sit in judgment of a President's executive decisions."   *Newdow v. Roberts*, 603 F.3d 1002, 1012 (D.C. Cir. 2010); *see also Mississippi v. Johnson*, 71 U.S. (4 Wall.) 475, 501 (1867).   Ralls argues that this case does not present a separation of powers concern because, if the Court were to vacate the Presidential Order, the President could avoid a confrontation between the branches simply by doing "nothing" in response.   (Opp'n 37.)   This argument only reveals the extremity of the

relief that Ralls seeks here; it effectively asks to be cleared of any restrictions on its purchase of a United States business, despite the national security concerns that the purchase raises.   Because it would be intolerable for the President to respond by doing "nothing," a review of his order would necessarily raise the separation of powers questions that Congress sought to avoid by enacting Section 2170(e).

The Defense Production Act, therefore, presents the clearest possible case for a preclusion of review.   The Act involves discretionary decisions on national security that have long been understood to be outside the scope of judicial competence.   It, moreover, involves the President's personal exercise of this discretionary power, and it is well established that courts do not play a role in that exercise of discretion.   And, by enacting Section 2170(e), Congress has plainly and emphatically re-affirmed the rule that judicial review is not available over the President's exercise of his discretionary national security powers.

### 2.   The Structure of the Act Confirms that Congress Intended to Preclude Judicial Review of Presidential Actions under the Act

The structure of the Act provides further confirmation that Congress meant what it said in Section 2170(e), and that the President's findings and actions under the Act are not subject to review.   The Act does not specify that the President or CFIUS shall make any report to the parties to a covered transaction, other than to announce the results of the review of that transaction.   *See* 50 U.S.C. App. § 2170(b)(6) (specifying only that CFIUS shall notify parties of the "results" of the review or investigation); 50 U.S.C. App. § 2170(d)(2) (requiring only that the President "announce the decision on whether or not to take action").   In contrast, Congress paid close attention to the content of the reports that Congress itself would receive from the President and CFIUS regarding the details of reviews and investigations of foreign transactions.

9

*See, e.g.*, 50 U.S.C. App. § 2170(b)(3).    This contrast demonstrates that Congress intended that it, and not the judiciary, would serve as the check on Executive action under the Defense Production Act.

Ralls quibbles with this reading (Opp'n 20) by noting that, in the 2007 amendments to the Act, Congress tinkered with the procedures under which the President will report to it.    In those amendments, however, Congress recognized that "[o]f necessity, the reviews and investigations, which contain classified evaluations of national security vulnerabilities as well as extensive proprietary business information, remain highly confidential," and that therefore its own oversight served as the critical check to ensure the Executive's "accountability to Congress and the public."    S. Rep. No. 110-80, at 3 (2007); *see also* H.R. Rep. No. 110-24, pt. 1, at 11 (2007). Moreover, in the same amendments, Congress revisited the statutory preclusion of review in Section 2170(e), and amended that provision's language to affirm that both the President's "findings" and his "actions" are not subject to review.    Pub. L. No. 110-49, § 6, 121 Stat. 246, 259 (2007).    Ralls's contention that Congress intended to permit judicial review in its 2007 amendments to the Act is thus belied by the actual content of those amendments.

Moreover, the strict deadlines for Presidential action under the Act provide additional confirmation that Congress intended to preclude judicial review.    The Act requires all review of a covered transaction to be complete no later than 90 days after CFIUS accepts notice of a covered transaction.    *See* 50 U.S.C. App. § 2170(b)(1)(E), (b)(2)(C).    This period includes the mere 15 days in which the President is directed to decide whether to take actions following CFIUS's conclusion of its investigation into a covered transaction.    50 U.S.C. App. § 2170(d)(2).    These "tight and rigid deadlines on administrative review and Presidential

10

action," coupled with Congress's "nonjudicial opportunities to assess any procedural (or other) irregularities" in the President's actions, demonstrate that Congress did not intend courts to interfere in this process. *See Dalton v. Specter*, 511 U.S. 464, 481-482 (1994) (Souter, J., concurring). Ralls cites (Opp'n 21) *Ralpho v. Bell*, 569 F.2d 607 (D.C. Cir. 1977), which declined to infer a preclusion of review from a statute imposing deadlines for action. But *Ralpho*, unlike *Specter*, did not involve a statute imposing strict deadlines for *Presidential* action, and this distinction is critical. It would be strange to assume that Congress saw the interest of finality to be of such importance that the President must take action personally within a mere 15 days after a CFIUS investigation is completed, and that Congress at the same time would have defeated the finality of the President's action by permitting judicial review then to follow. More to the point, no assumptions are necessary as to Congress's intent. Congress plainly forbade jurisdiction over claims challenging the President's findings and actions under the Act, such as the claims that Ralls raises here.

    **C.**    **The Preclusion of Judicial Review Applies with Particular Force to Ralls's Insubstantial, As-Applied Challenges to the Presidential Order**

        **1.**    **Ralls Raises No Challenge to the President's Interpretation of His Authority under the Defense Production Act that Allows It to Circumvent the Jurisdictional Bar**

As noted, 50 U.S.C. App. § 2170(d)(1) provides that "the President may take *such action for such time* as the President *considers appropriate* to suspend or prohibit *any* covered transaction that threatens to impair the national security of the United States." 50 U.S.C. App. § 2170(d)(1) (emphasis added). Invoking this authority, the President found that "[t]here is credible evidence that leads [him] to believe" that Ralls and its principals, through exercising control of the Project Companies, "might take action that threatens to impair the national security

11

of the United States."   Presidential Order, § 1, 77 Fed. Reg. at 60,281.   On the basis of this

finding, the President prohibited Ralls's acquisition of the Project Companies, ordered Ralls to

divest itself of those companies, and imposed additional conditions on Ralls, such as a

prohibition on Ralls's access to the property of the Project Companies, that were directed at

ensuring the restoration of the *status quo ante* in place before the acquisition.   *Id.*, § 2, 77 Fed.

Reg. at 60,281-60,283.   Ralls contends that the President exceeded his statutory authority by

imposing these conditions.   Its claim directly challenges the President's "findings" and

"actions" under 50 U.S.C. App. § 2170(d), and so this Court lacks jurisdiction over the claim

under 50 U.S.C. App. § 2170(e).

　　　Even in the absence of Section 2170(e)'s express preclusion of review, this Court would

lack jurisdiction over Ralls's claims.   The President is not an agency subject to suit under the

Administrative Procedure Act ("APA").   *See Franklin v. Massachusetts*, 505 U.S. 788, 801

(1992).   Nor is the President subject to suit under a non-statutory cause of action.   As the

Supreme Court has made unmistakably clear, "[w]here a statute . . . commits decisionmaking to

the discretion of the President, judicial review of the President's decision is not available."

*Specter*, 511 U.S. at 477.   The Defense Production Act certainly qualifies as such a statute,

given its broad grant of power to the President to "take *such action* for *such time* as [he]

*considers appropriate*" to protect the national security.   50 U.S.C. App. § 2170(d)(1) (emphasis

added).

　　　Ralls cites (Opp'n 30) to language in *Specter* in which the Court "assume[d] for the sake

of argument" that "some claims that the President has violated a statutory mandate are judicially

reviewable outside the framework of the APA."   511 U.S. at 474.   Ralls's reliance on this

12

language is puzzling, since nowhere in its brief does Ralls point to a "statutory mandate" that it contends that the President violated.   Its claim is not that the President violated a particular statutory *restriction* on his powers, but that a statutory *grant* of power does not extend as far as the President understands it to reach.   Its claim is one "simply alleging that the President has exceeded his statutory authority," which is not subject to judicial review.   *Specter*, 511 U.S. at 473.   And the rule of *Specter* applies with special force here, given Congress's emphatic re-affirmation of that rule in its enactment of Section 2170(e).

As the defendants have shown, Section 2170(e) precludes any attempt to assert a non-statutory cause of action against the President or his subordinates under *Leedom v. Kyne*, 358 U.S. 184 (1958).   Ralls responds by disclaiming any reliance on *Kyne*, and instead cites *Dart v. United States*, 848 F.2d 217 (D.C. Cir. 1988), which it contends authorizes a different sort of non-statutory cause of action.   (Opp'n 35.)[1]   *Dart*, however, has nothing whatsoever to do with a statute, like 50 U.S.C. App. § 2170(e), that precludes review of action by the President.   That case involved the review of action by an agency subject to the APA.   The court reasoned that the APA's preclusion of judicial review, 5 U.S.C. § 701(a)(1), "serves only to take away what the APA has otherwise given – namely, the APA's own guarantee of judicial review," and not the non-statutory cause of action that would have been available against that agency before the enactment of the APA.   *Dart*, 848 F.2d at 224.   But, as *Specter* recognized, there is no cause of action, under the APA or otherwise, that permits a claim that simply alleges that the President has exceeded his statutory authority.   *Specter*, 511 U.S. at 473.   Moreover, *Dart*

---

[1]   Whether a "*Dart* action" is any different from a "*Kyne* action" is neither here nor there, but certainly the *Dart* court itself did not contend that it was creating a new type of non-statutory cause of action.   *See Dart*, 848 F.2d at 222 (applying "[t]he *Leedom v. Kyne* test for whether an agency has acted 'in excess of its delegated powers'").

cannot apply "if Congress precluded non-statutory judicial review," as it did in enacting Section 2170(e). *Chamber of Commerce v. Reich*, 74 F.3d 1322, 1328 (D.C. Cir. 1996). *See also id.* at 1331 n.4, 1332 n.5 (recognizing that review is unavailable to challenge the President's exercise of discretion afforded to him under a statute, particularly in cases involving national security).

Even where a non-statutory cause of action would be available, "*Dart* stands for the exceedingly narrow proposition that a statute precluding review is limited by its language.   . . . *Dart* cannot mean that statutory insulation of a specific type of 'order' from review is automatically ineffective whenever the complainant asserts legal error." *McBryde v. Comm. to Review Circuit Council Conduct & Disability Orders of Judicial Conf. of United States*, 264 F.3d 52, 63 (D.C. Cir. 2001).   Here, Ralls directly challenges the President's "findings" and "actions" under Section 2170(d), and its claim is squarely prohibited by Section 2170(e).   The "exceedingly narrow proposition" of *Dart* thus does not permit Ralls to pursue its claims here.

Ralls nonetheless asserts that the President exceeded his statutory authority under Section 2170(d), which it asserts "conferred upon the President the discrete power to 'suspend or prohibit' a covered transaction, and nothing more."   (Opp'n 30.)   This is a patent misreading of the statute.   Again, the Act broadly authorizes the President to "take *such action* for *such time* as the President *considers appropriate* to suspend or prohibit any covered transaction that threatens to impair the national security of the United States."   50 U.S.C. App. § 2170(d)(1) (emphasis added).   The Act thus plainly affords the President the authority to take any action that he determines will result in the prohibition of the transaction, and to impose conditions to ensure that a transaction is truly and permanently "prohibited," or undone where necessary, as

here.   *See Dames & Moore*, 453 U.S. at 678 (noting broad construction to be afforded to Congressional grant of authority to the President in the field of national security); *Haig v. Agee*, 453 U.S. 280, 291 (1981) (same).   In other words, where (as here) a foreign party has entered into a transaction without going through the CFIUS process, the President has the authority to ensure that the *status quo ante* is restored, and to ensure that the foreign party does not circumvent the President's order, or gain the benefit of assets that it should not have acquired in the first place.   *See* 50 U.S.C. App. § 2170(d)(3) (permitting the President to direct the Attorney General "to seek appropriate relief, including divestment relief . . . in order to implement and enforce" the President's actions).

Accordingly, in order to adjudicate Ralls's challenge to the President's selection of conditions in his order prohibiting the transaction at issue here, this Court would need to review why the President made a finding of a threat to the national security, and why the President "consider[ed it] appropriate" to impose the particular conditions that he did to effectuate the prohibition of the transaction.   That is precisely the sort of review that is prohibited under 50 U.S.C. App. § 2170(e).   This Court thus lacks jurisdiction over Ralls's claim that the President exceeded his statutory authorities.

### 2. Ralls Raises No Substantial Constitutional Challenge to the President's Exercise of His Discretion under the Defense Production Act

Ralls also purports to raise due process and equal protection claims against the manner in which the President exercised his discretion under the Defense Production Act.   It relies (Opp'n 14-19) on cases that apply the constitutional avoidance principle, under which courts will interpret statutory withdrawals of jurisdiction not to preclude review of all substantial constitutional claims that could arise in response to particular agency action.   *See Johnson v.*

15

*Robison*, 415 U.S. 361, 373-74 (1974).   But there is no reason to invoke this principle here.

Judicial review is as likely to create a constitutional question as it is to resolve one, given the

nature of Presidential discretion under the Defense Production Act.   As noted above, in enacting

Section 2170(e), Congress acted to avoid the troubling constitutional questions that arise if a

district court were to supervise the President's exercise of that discretion, contrary to the

principle of *Mississippi v. Johnson*, 71 U.S. (4 Wall.) 475, 499 (1867), that the President may not

be subject to that review.   The constitutional avoidance principle should not be invoked to

create constitutional problems, rather than resolve them.[2]

Moreover, Ralls does not present any substantial constitutional claims that might give

rise to a presumption that judicial review would be available for those claims.   Ralls protests

that its constitutional claims are not "frivolous," and that it need only clear that "exceedingly

low" hurdle to defeat the statutory preclusion of review.   (Opp'n 22.)   Ralls misjudges the

height of this hurdle, and thus falls short in its effort to clear it.   The principle that Ralls invokes

– that is, that a court should interpret a statutory preclusion of review not to foreclose

consideration of a meritorious constitutional claim, if such an interpretation is available – is a

form of the constitutional avoidance canon.   But that canon applies only where "serious

constitutional doubts" would arise from an alternative interpretation of the statute.   *See Clark v.

Martinez*, 543 U.S. 371, 381–82 (2005) (the canon of constitutional avoidance "is a tool for

---

[2]   Indeed, because, under *Specter*, a statutory claim challenging the President's exercise of his discretion under the Act would be barred even in the absence of the statute, the only effect of Section 2170(e) is to bar constitutional claims as well.   Section 2170(e)'s preclusion of review, after all, must have some effect in addition to the rule of non-justiciability that would apply in the statute's absence.   "[O]ne of the most basic interpretive canons [is] that a statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant."   *Corley v. United States*, 556 U.S. 303, 314 (2009) (internal quotation marks and alterations omitted).

choosing between competing plausible interpretations of a statutory text, resting on the reasonable presumption that Congress did not intend the alternative which raises serious constitutional doubts"). Thus, in *Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471, 487-88 (1999), for example, the Court declined to apply the doctrine of constitutional doubt, and instead held a statutory preclusion of review to foreclose consideration of a constitutional claim that did not raise serious doubts for the Court.

Moreover, as noted above, Ralls never offers any interpretation of Section 2170(e) that could justify review of the due process and equal protection claims here.[3] Those claims are direct challenges to the President's "findings" and "actions," and so they are precluded under any plausible reading of Section 2170(e). Nor do those claims present the sort of serious constitutional doubts that could prompt the Court to search for a limiting construction. "A clear statute and a weak constitutional claim are not a recipe for successful invocation of the constitutional avoidance canon." *Empresa Cubana Exportadora de Alimentos y Productos Varios v. Dep't of Treasury*, 638 F.3d 794, 801 (D.C. Cir. 2011), *cert. denied*, 132 S. Ct. 2377 (2012).

First, Ralls's due process claim does not present any substantial constitutional question. In order to hold a property interest in a benefit that would be protected by the due process clause,

---

[3]   As the defendants have noted, there is a limit to the scope of the Section 2170(e), but it is not one that helps Ralls here. A facial challenge to the Act that does not raise a challenge to the President's "findings" or "actions" would not be subject to the Section 2170(e) preclusion of review. *See General Elec. Co. v. EPA*, 360 F.3d 188, 193 (D.C. Cir. 2004) (interpreting statutory bar on review not to apply to facial challenge, but recognizing that constitutional challenges to "specific EPA orders and actions" would be barred). Ralls does not raise any such facial challenge, but instead disputes the specific Presidential Order at issue here. Ralls's concern (Opp'n 3) that Section 2170(e) would preclude "all review" under the Defense Production Act is thus entirely misplaced.

17

a party must have "a legitimate claim of entitlement" to that benefit.   *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972).   But a foreign person has no legitimate claim of entitlement to purchase a United States business, where that acquisition implicates national security, without CFIUS approval.   The Defense Production Act explicitly puts the parties on notice that even a completed transaction that poses a threat to national security is subject to prohibition by the President, if the parties have not sought prior review through the CFIUS process.   50 U.S.C. App. § 2170(b)(1)(D); 31 C.F.R. § 800.401(c).   Given the "very powerful nonjudicially reviewable authority of the President to stop or unwind transactions" that have not been noticed, no well-advised purchaser would proceed with a transaction that impinges on national security without first seeking CFIUS approval.   *See A Review of the CFIUS Process of Implementing the Exon-Florio Amendment: Hrgs. Before the S. Comm. on Banking, Housing, and Urban Affairs*, 109th Cong. 114 (2005) (testimony of Robert M. Kimmitt, Deputy Secretary, U.S. Dep't of Treasury).

Yet that is precisely what Ralls did here.   It purchased the Project Companies without providing notice to CFIUS, and CFIUS only learned of the transaction after the fact.   Because Ralls chose to avoid the CFIUS process in this manner, any interests that it gained in the Project Companies were "'revocable,' 'contingent,' and 'in every sense subordinate to the President's power under the [Defense Production Act],'" *Dames & Moore*, 453 U.S. at 674 n.6, and Ralls gained no property interests protectable by the due process clause in those companies.   Ralls's only response on this point is its assertion (Opp'n 24) that *Dames & Moore* involved a takings claim, not a due process claim.   But it fails to explain why the distinction matters.   The point is that Ralls had no "legitimate claim of entitlement" in any assets that it sought to acquire after

18

forgoing review through the CFIUS process, and thus no property interest protected by the due process clause accrued to it.   In any event, Ralls misreads *Dames & Moore*; the Court directly "disagree[d]" with the parties' assertion that they had acquired "property interests in their attachments," given the contingent nature of those assets, and reasoned that a takings claim necessarily would fail given that conclusion.   453 U.S. at 674 n.6.   That holding left no more room for a due process challenge than it did a takings challenge.

Moreover, Ralls cannot dispute that it *has* been afforded the opportunity to participate in the CFIUS process.   As its own pleadings demonstrate, Ralls was provided a full opportunity to submit a notice of its transaction, and Ralls exercised that opportunity by submitting a detailed argument addressing, among other things, why Ralls believed that its transaction did not present a threat to national security, and why it believed that any possible national security threat could be addressed by provisions of law other than the Defense Production Act.   (Mot. for TRO, Ex. 7, ECF No. 7-7.)   Ralls continues to claim that it should have also received the opportunity to review the evidence giving rise to the Presidential Order.   It is well-settled, though, that due process does not require the disclosure of classified information to a regulated party.   *See Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 164 (D.C. Cir. 2003) (due process does not prevent decision based on classified information to which party did not have access).

Ralls's equal protection claim is even further afield.   The claim is nothing more than a disguised challenge to the President's exercise of his discretion.   Section 2170(e)'s bar on review of the President's findings and actions would be eviscerated if a plaintiff could avoid it simply by raising a rational basis equal protection claim.   *See, e.g., Manani v. Filip*, 552 F.3d 894, 900 n.3 (8th Cir. 2009).   In any event, to prevail on such a claim, Ralls would need to

negate "every conceivable basis which might support" the Presidential Order.   *Tate v. District of Columbia*, 627 F.3d 904, 910 (D.C. Cir. 2010) (internal quotations omitted).   Its mere speculation that the President engaged in "protectionism" for campaign purposes (Opp'n 29) does not come close to meeting this burden.

In sum, Ralls's due process and equal protection claims do not present any serious constitutional question with respect to the President's findings and actions giving rise to the Presidential Order.   There is therefore no reason for the Court to do anything other than apply the plain language of Section 2170(e) and hold that it lacks jurisdiction over all of Ralls's claims with respect to that order.

## II.   Ralls's Challenge to the Amended Interim Order Is Moot

Ralls also purports to challenge the Committee's August 2, 2012 Amended Interim Order.   The President revoked that order, however, when he issued his Presidential Order.   Presidential Order, § 3, 77 Fed. Reg. at 60,283.   The Amended Interim Order therefore no longer imposes any obligations on Ralls.   Because this Court's jurisdiction is limited to the resolution of "'actual, ongoing controversies,'" *Theodore Roosevelt Conservation P'ship v. Salazar*, 661 F.3d 66, 78 (D.C. Cir. 2011) (quoting *Honig v. Doe*, 484 U.S. 305, 317 (1988)), Ralls's challenge to the Amended Interim Order is moot.

Ralls contends (Opp'n 40) that its claim survives under the exception to the mootness rule for cases where "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again."   *FEC v. Wis. Right to Life, Inc.*, 551 U.S. 449, 462 (2007) (internal quotation marks omitted).   Because there is no reasonable

expectation that Ralls will be subject to the "same action" from CFIUS, however, it cannot meet its burden to show that this case presents the sort of "exceptional situation[]" in which this doctrine could apply.   *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983).

Ralls asserts that it will be subject to the same action again, because it is in the business of acquiring existing American companies, and thus will be subject to CFIUS's "policies, regulations, [and] guidelines" again in the future.   (Opp'n 42.)   This does not suffice.   A plaintiff may not revive a moot complaint simply by alleging that it will deal with the same agency again; instead it must demonstrate that "it will be subject to the same legal wrong" in the future.   *Del Monte Fresh Produce Co. v. United States*, 570 F.3d 316, 325 (D.C. Cir. 2009). In other words, "[t]he 'wrong' that is, or is not, 'capable of repetition,' must be defined in terms of the precise controversy it spawns."   *People for the Ethical Treatment of Animals, Inc. v. Gittens*, 396 F.3d 416, 422 (D.C. Cir. 2005) ("*PETA*").

Ralls's claims of "legal wrongs" that allegedly arose from the Amended Interim Order "are highly fact-specific," and thus those claims are moot.   *Fund for Animals, Inc. v. U.S. Bureau of Land Mgt.*, 460 F.3d 13, 22 (D.C. Cir. 2006).   Ralls alleges that:   (1) CFIUS exceeded its statutory authority in its selection of the particular restrictions that it imposed on Ralls in the Amended Interim Order (Am. Compl., ¶¶ 104-19); (2) that CFIUS acted arbitrarily and capriciously by imposing those conditions after another government agency purportedly consented to Ralls's transaction (*id.*, ¶¶ 120-31); (3) that CFIUS deprived it of property without due process, on the theory that the particular interim restrictions that CFIUS imposed amounted to a deprivation of Ralls' property (*id.* ¶¶ 144-56); and (4) that CFIUS denied Ralls the equal protection of the law, on the theory that other similarly-situated persons near the Oregon

properties have not been subject to a similar order (*id.*, ¶¶ 157-67).   Each of these claims turns on the particular features of the current transaction under review.   It is highly implausible for Ralls to assert that its claims would arise in the same context again.   Because Ralls's challenge to the Amended Interim Order "is highly dependent upon a series of facts unlikely to be duplicated in the future," *PETA*, 396 F.3d at 424, that challenge does not survive.

Indeed, Ralls does not even seriously attempt to argue that it will suffer the same alleged "legal wrong" from CFIUS again.   The most that it offers is its claim that CFIUS has a "perfect record of issuing orders" against Ralls (Opp'n 44), without mentioning that this "perfect record" consists of this case and this case only.   Indeed, as the defendants have shown, Ralls has engaged in other windmill projects that CFIUS has not reviewed.   (Declaration of Marisa Lago, ¶ 9, ECF No. 11-1.)   Ralls objects that these other projects did not qualify as "covered transactions" that would be subject to CFIUS jurisdiction.   (Opp'n 43.)   But, given that Ralls also disputes whether its acquisition of the Project Companies was a "covered transaction," (ECF 20, ¶ 121, 136), this is no distinction at all.

At bottom, Ralls can only offer speculation that it will be subject to a CFIUS order again, or that such a hypothetical future order would subject it to the same "legal wrongs" that it alleges here.   But "[a] theoretical possibility, however, is not sufficient to qualify as capable of repetition.   There must instead be a reasonable expectation or demonstrated possibility that the action will recur."   *Beethoven.com, LLC v. Librarian of Congress*, 394 F.3d 939, 951 (D.C. Cir. 2005) (internal quotation marks omitted).   Ralls's challenge to the Amended Interim Order is moot.

**Conclusion**

For the foregoing reasons, the United States respectfully requests that the Court dismiss this action for lack of subject matter jurisdiction.

Dated: November 19, 2012                    Respectfully submitted,

                                            STUART F. DELERY
                                            Principal Deputy Assistant Attorney General

                                            IAN HEATH GERSHENGORN
                                            Deputy Assistant Attorney General

                                            RONALD C. MACHEN, JR.
                                            United States Attorney

                                            VINCENT M. GARVEY
                                            Deputy Branch Director

                                            SANDRA M. SCHRAIBMAN
                                            Assistant Branch Director


                                            ____/s/ Joel McElvain_____
                                            JOEL McELVAIN
                                            Senior Trial Counsel
                                            U.S. Department of Justice
                                            Civil Division, Federal Programs Branch
                                            20 Massachusetts Avenue, NW
                                            Washington, D.C. 20530
                                            (202) 514-2988
                                            Joel.McElvain@usdoj.gov

23